No. 15,520.

MILNER *v.* RUTHVEN.
(178 P. [2d] 417)

Decided February 17, 1947. Rehearing denied March 17, 1947.

Messrs. LEE, SHAW & McCREERY, Mr. WILLIAM A. BRYANS, III, Mr. CHARLES J. KELLY, for plaintiff in error.

Mr. CARLE WHITEHEAD, Mr. ALBERT L. VOGL, for defendant in error.

*En Banc.*

Mr. JUSTICE HAYS delivered the opinion of the court.

ABOUT the middle of August, 1942, Alfred L. Ruthven, an experienced subdivider of suburban tracts, was in the employ of A. Milner, a licensed real estate broker, under which employment he was: (1) To negotiate selling agency contracts between the owners of suburban tracts of land and Milner; (2) assist in preparing of such tracts for sale in small lots or parcels; (3) and sell same at prices to be agreed upon between the parties.

As compensation for the performance of said duties by plaintiff, Milner promised to prepare such tracts for sale, advance the necessary expenses therefor, contribute his time and experience and the use and facilities of his real estate office, and also extensively to advertise said tracts for sale. Ruthven under such employment was to have the exclusive sales rights and receive in payment for his services one-half of the payments as made by purchasers, after first deducting the amounts paid to the owners of said tracts and "expenses of preparing the parcels and lots for sale."

In accordance with the terms of said employment, the record shows that Ruthven: (1) Negotiated two sales agency contracts, one of which was between Nels T. Johnson and Milner, and the other between John Peter Heiser and Milner; (2) assisted in preparing the parcels and lots for sale; and (3) sold approximately one-fourth of said parcels, devoting his full time to such activities from the middle of August, 1942, to the middle of March, 1943.

On or about March 16, 1943, a dispute arose between Ruthven and Milner as to whether or not the cost of constructing a water system to supply the parcels and lots with water should be considered as "expenses of preparing the parcels and lots for sale," within the meaning of the employment agreement aforesaid. If it was to be so considered, the cost thereof should be deducted from the sales price of the lots before a division

of the profits between Ruthven and Milner; otherwise such expense would fall upon Milner alone.

As a result of this dispute, the agreement was terminated and Ruthven thereupon instituted this action against Milner to recover in quantum meruit for the reasonable value of the services rendered.

The trial court found in substance: (1) That the agency of Ruthven was not coupled with an interest; (2) that defendant had the right to terminate such agency at will "subject to liability for the value of plaintiff's services under quantum meruit"; (3) that there was an implied revocation of the agreement, March 16, 1943, arising from the acts of the defendant, and in any event, the agency contract was expressly terminated by letter of defendant dated April 3, 1943; (4) that the expense of constructing water mains was a "necessary expense of preparing the parcels for sale," and that this expense was included in the selling price of the lots; (5) that the plaintiff was entitled to recover from defendant the sum of six thousand dollars, and judgment was entered accordingly.

As grounds for reversal, as appears from his specification of points, Milner contends: (a) That plaintiff wholly failed to sustain the burden of proof as to the alleged value of services rendered by him to defendant; (b) the measure of plaintiff's recovery, if he is entitled to recover, is limited to the contract price of the lots sold, less all expenses incurred; (c) the judgment is excessive.

■ *Briggs v. Robinson*, 82 Colo. 1, 256 Pac. 639, 52 A.L.R. 1172, is similar in many respects to the instant case. There, Briggs entered into an agreement with Robinson to build a house in accordance with agreed plans and specifications. Upon alleged noncompliance with the terms of the agreement, and after demand by Robinson that Briggs cease further work on the house, and the latter's refusal to accede to the demand, suit was brought by Robinson for rescission of the contract.

Briggs, by cross complaint, asked for the reasonable value of his services in the event the contract was rescinded. The trial court held under the above facts that Briggs' conduct indicated his intention not to execute the contract in its essential terms, and that Robinson was justified in ordering the work stopped and rescinding the contract. Briggs was awarded the sum of $116.36, plus interest, and costs on his cross complaint and we affirmed the judgment, stating: "The same being the value of the labor done and material furnished by the defendant that went into the construction of the house for the plaintiff's benefit before defendant stopped work."

There is no valid reason why we should not apply the doctrine of the above case in the present one. Here the trial court found that Milner terminated the employment. There is ample evidence to support that finding. Plaintiff was awarded a judgment of six thousand dollars, which indicated that in the trial court's judgment a benefit to that extent had been conferred upon Milner by reason of plaintiff's services. Milner accepted Ruthven's services from day to day over a period of seven months, and apparently was satisfied with those services. There is nothing in the agreement, as shown by the record, that plaintiff was required to wait until full performance of the agreement before he was entitled to receive any compensation or that there was any agreement that nothing was earned until the whole service was performed. We are not impressed by the defendant's argument that the amount of plaintiff's recovery should be measured by his profits attributable to his efforts at the time of the termination of his employment. The benefits of plaintiff's services, the trial court must have found, extended beyond the time when the employment was terminated. All preliminary work in preparing the entire tracts for sale was completed prior to the time any of the lots were sold. None of that work had to be re-executed by defendant after plaintiff's em-

ployment was terminated. Every time a lot was sold, after the termination of plaintiff's employment, Milner benefited by plaintiff's services previously rendered. Under such circumstances the law implies a promise on the part of the employer to pay the employee for the reasonable value of his services in the light of benefits conferred. 12 Am. Jur., p. 903, §§344, et seq.; 28 R.C.L., p. 698, §§35, et seq.

■■ As stated above, the trial court awarded the plaintiff judgment in the sum of six thousand dollars as compensation for services rendered up to the time of the termination of his employment by the defendant. The findings and judgment were based upon conflicting evidence. The court, in its findings, did not indicate the method by which it arrived at the above figure. It is less than the plaintiff alleges he should receive, and more than the defendant feels he should pay. It is sufficient, however, to say that we have carefully examined the record and there is abundant evidence to support the findings and judgment of the trial court, and therefore, under the established rule in this jurisdiction, they may not be disturbed on review. All presumptions are in favor of the findings of the trial court, and the record should be viewed in the light most favorable to the successful party. *Zimmerman v. Hinderlider,* 112 Colo. 277, 148 P. (2d) 813, 814; *Mountain States Oil Corp. v. Sandoval,* 109 Colo. 401, 406, 125 P. (2d) 964; *McCarthy v. Eddings,* 109 Colo. 526, 529, 127 P. (2d) 883.

The judgment is affirmed.